USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/06/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------X
L.B. AND T.B.,                                         :
                                                       :
                              Plaintiffs,[1]           :
                                                       :
            -against-                                  :
                                                       :        21-CV-6626 (VEC)
                                                       :
NEW YORK CITY DEPARTMENT OF                            :
EDUCATION; CHANCELLOR DAVID BANKS,                     :        ORDER AND OPINION
IN HIS OFFICIAL CAPACITY; NEW YORK                     :
CITY BOARD OF EDUCATION,                               :
                                                       :
                              Defendants.              :
                                                       :
-------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

This case arises from Defendants' alleged failure to provide a Free Appropriate Public

Education ("FAPE") as required by the Individuals with Disabilities Education Act, 20 U.S.C. §§

1400 *et seq.* (the "IDEA")[2] to a young man with learning disabilities.  Defendants moved to

---

[1]        Although L.B. brought this lawsuit on behalf of herself and her child T.B., she does not have standing to
sue on T.B.'s behalf because he was not a minor at the time the lawsuit was filed.  *See* Compl., Dkt. 9, ¶ 5 (alleging
that T.B. is "a 19-year-old young man"); *see also Capellupo v. Webster Cent. Sch. Dist.*, No. 13-CV-6481 (EAW),
2014 WL 6974631, at *3 (W.D.N.Y. Dec. 9, 2014) ("[S]uch rights as parents may have had because of their child's
infancy to prosecute an action on her behalf as parents and natural guardians or next friends clearly cease when the
child becomes an adult.") (cleaned up) (citations omitted).  State law determines whether an individual is a minor,
*see* Fed. R. Civ. P. 17(b), and under New York law, a minor or "infant" is "a person who has not attained the age of
eighteen years." N.Y. C.P.L.R. § 105(j).  Because T.B. was nineteen at the time this case was filed, the Court *sua
sponte* dismisses L.B.'s claims on her son's behalf for lack of standing.  *See Guggenheim Capital, LLC v. Birnbaum*,
722 F.3d 444, 449 (2d Cir. 2013) ("Issues relating to subject matter jurisdiction may be raised at any time, even on
appeal, and even by the court *sua sponte*.") (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250
(2d Cir. 2008)).

        For that same reason, the Court questions whether Plaintiffs are entitled to proceed anonymously.  *See* Am.
Compl., Dkt. 36, ¶ 5 n.1; *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)
(discussing the "common law presumption of access" to judicial documents); *B.J.S. v. State Educ. Dep't/Univ. of
State of N.Y.*, No. 08-CV-513A (LGF), 2010 WL 502796, at *4 (W.D.N.Y. Feb. 9, 2010) ("[C]ourts have required
the use of plaintiffs' initials in IDEA actions to protect the privacy interests of *minor* plaintiffs.") (emphasis added)
(collecting cases).  The Court addresses this issue *infra*, Conclusion.

[2]        Plaintiffs also bring claims under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 to 796 (the
"Rehabilitation Act"); the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117 (the "ADA"); 42
U.S.C. § 1983 ("Section 1983"); the New York Constitution; New York Education Law §§ 3202, 3203, 4401, 4404,

dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Defs. Not. of

Mot., Dkt. 42.  For the following reasons, Defendants' motion is GRANTED in part and

DENIED in part.

## BACKGROUND[3]

Plaintiff T.B. is now a twenty-year-old adult who has been diagnosed with several

conditions and disorders that entitled him to special education services.[4]  Am. Compl., Dkt. 36, ¶

5.  Plaintiff L.B. is T.B.'s mother.  *Id.* ¶ 6.  Defendants New York City Department of Education

(the "DOE") and New York City of Board of Education (the "Board") are responsible for

developing policies to administer and operate public schools in the City of New York, including

programs and services for students with disabilities.  *Id.* ¶¶ 8–9.  Defendant David Banks is the

Chancellor of the New York City School District.  *Id.* ¶ 10.

T.B. graduated from middle school in June 2016.[5]  *Id.* ¶ 201.  L.B. eventually learned that

her son's assigned high school, Eagle Academy, could not implement his individualized

education program ("IEP").[6]  *Id.* ¶¶ 211–12.  According to Plaintiffs, T.B.'s participation in New

---

and 4410 (the "New York Education Law"); and the Regulations of the New York State Commissioner of
Education, 8 N.Y.C.R.R. §§ 200.1, *et seq.* (the "New York Education Regulations").

[3]     For the purposes of this motion, the Court treats the facts alleged in the Amended Complaint as true.  The
Court also treats the facts contained in the administrative complaints and decisions incorporated by reference in the
Amended Complaint as true.  *See Killoran on behalf of A.K. v. Westhampton Beach Union Free Sch. Dist.*, No. 20-
CV-269 (JS) (SIL), 2021 WL 1874863, at *1 (E.D.N.Y. Feb. 11, 2021) (noting that the court accepted the facts as
set forth in the administrative due process complaint incorporated by reference into the complaint as true).

[4]     T.B. has been diagnosed with attention deficit disorder and central auditory processing disorder.
Additionally, he has social and emotional needs that have an impact on his ability to learn.  Am. Compl. ¶ 5.

[5]     From 2011 through June 2016, T.B. attended the Roosevelt Children's Academy.  *Id.* ¶ 159.  On September
7, 2015, Plaintiffs filed a Due Process Complaint ("DPC 1") alleging, *inter alia*, denial of a FAPE for the 2015–
2016 school year and seeking, among other relief, compensatory education services.  *Id.* ¶¶ 162–64.  On October 9,
2015, an Impartial Hearing Officer ("IHO") issued a pendency order ("Pendency Order 1") requiring the DOE to
fund services for T.B. pending the IHO's final decision.  *Id.* ¶ 170.

[6]     The IDEA requires states receiving federal funds to provide a FAPE to "all children with disabilities."  20
U.S.C. § 1412(a)(1)(A).  Defendants receive federal funds for the provision of general and special education
services to children who reside in New York City.  Am. Compl. ¶ 13.  A FAPE must include "special and related

York City's high school choice program, which matches students with high schools (the "High

School Choice Program" or the "Program"), was "essentially a sham" because Defendants "took

no steps to ensure that [T.B.] was able to attend his selected high school." *Id.* ¶ 87.

On September 1, 2016, Plaintiffs filed a Due Process Complaint ("DPC 2")[7] alleging,

*inter alia*, denial of a FAPE for the 2016–17 school year and seeking, among other relief,

placement at a more suitable high school and compensatory education services. *Id.* ¶ 213; DPC

2, Dkt. 48-2 at 1–15.[8]  On November 21, 2016, an IHO issued a pendency order ("Pendency

Order 2") requiring the DOE to provide services for T.B., including special education teacher

support services, counseling services, speech and language therapy, assistance through a laptop,

and special education transportation between his home and the Huntington Learning Center for

credit-bearing instruction, pending the IHO's final decision. *Id.* ¶ 231; *see* Pendency Order 2,

Dkt. 48-3, at 1–6.[9]

---

services tailored to meet the unique needs of a particular child . . . and be reasonably calculated to enable the child to received educational benefits . . . ." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998) (internal quotation marks and citations omitted).

An IEP is "the central mechanism by which public schools ensure that their disabled students receive a [FAPE]." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 482 (2d Cir. 2002); *see also* 20 U.S.C. § 1414(d)(1)(A)–(B), (d)(3) (setting forth requirements for IEPs).  Eagle Academy was unable to implement T.B.'s IEP because, *inter alia*, the school lacked "self-contained classes" and qualified providers.  Am. Compl. ¶ 212.

[7]     The DPC 2 case number is 162323. *Id.* ¶ 215.

[8]     On June 1, 2017, Plaintiffs filed a third Due Process Complaint ("DPC 3"), *id.* ¶ 268; *see also* DPC 3, Dkt. 48-2 at 16, that was "ultimately consolidated" with DPC 2.  Am. Compl. ¶ 269.  DPC 3 raised, among other issues, Defendants' purported failure to explain and offer the High School Choice program to T.B.  *See* DPC 3 ¶¶ 20(k), 71–72.

[9]     According to Plaintiffs, the DOE "did not implement stay-put for T.B. for September, October, and November of 2016."  Am. Compl. ¶ 227.  Plaintiffs do not specify, however, which aspect of T.B.'s educational placement violated his pendency rights during this time.

For the school year 2016–17, T.B. received no general education instruction. *Id.* ¶¶ 233, 238. Instead, T.B. attended Huntington Learning Center, which advised that it could provide high school credit-bearing instruction if the DOE approved. *Id.* ¶ 235. The DOE never provided the requisite approval, however, and did not offer an alternative placement. *Id.* ¶¶ 238–39. According to Plaintiffs, T.B.'s only option was to attend Eagle Academy, which L.B. maintained could not implement T.B.'s IEP. *Id.* ¶ 242.

According to the Amended Complaint, on December 21, 2016, the DOE offered T.B. placement at George Washington Carver High School, *id.* ¶ 245, which L.B. rejected, *id.* ¶ 259. The exact timing of that placement offer is unclear, however, as Plaintiffs alleged in DPC 3 that the DOE had offered T.B. placement at George Washington Carver High School in June 2016.[10] *See* DPC 3 ¶ 27.

On February 4, 2017, the IHO assigned to DPC 1 issued a Findings of Fact and Decision concluding that T.B. had been denied a FAPE for the 2015–16 school year ("FOFD 1"). *See* Am. Compl. ¶ 203; FOFD 1, Dkt. 48-1. The IHO awarded T.B. compensatory counseling services, speech and language therapy, and payment for special education transportation, among other relief.[11] *See* Am. Compl. ¶¶ 203–04; FOFD 1 at 15–16.

Having rejected both Eagle Academy and George Washington Carver High School, T.B. was not in school and did not receive credit-bearing instruction for most of the 2017–18 school year. *Id.* ¶ 271. For that reason, T.B. missed two years of credit-bearing instruction beginning in

---

[10]     The exact date of the George Washington Carver High School placement is not material to the Court's opinion. Plaintiffs are cautioned, however, to be more careful in the future.

[11]     Defendants did not appeal FOFD 1. *Id.* ¶ 205.

2016, when he graduated from middle school. *Id.* ¶¶ 201, 238, 271.[12]  T.B. returned to school in

the 2018–19 school year, after having been admitted at some unspecified time to Fox Meadow

High School in Westchester County.[13]  *Id.* ¶ 275.

On July 2, 2018, an IHO issued an interim pendency order ("Pendency Order 3") stating

that T.B.'s new pendency program included placement at Fox Meadow High School beginning

on September 1, 2018, and ordering the DOE to arrange transportation to effectuate his

placement, "taking into account [his] fragility and travel restrictions." *Id.* ¶ 276; Pendency Order

3, Dkt. 48-3 at 28, at 30–32.

On August 6, 2018, the IHO assigned to DPC 2 issued a Findings of Fact and Decision

concluding that T.B. had been denied a FAPE for the 2016–17 school year ("FOFD 2") because

Defendants did not develop an adequate IEP for him and, even if it had, his high school

placement was not capable of implementing his IEP.  *See* Am. Compl. ¶ 277;  FOFD 2, Dkt. 48-

4, at 9–10.[14]  The IHO awarded T.B. an additional year of special education at Fox Meadow

High School or comparable program to be used by August 31, 2025 (unless he received a

Regents high school diploma[15] before that date), and compensation for missed pendency services

---

[12]    Although not entirely clear, the Court construes the Amended Complaint as alleging that T.B. was denied credit-bearing instruction for the school years 2016–17 and 2017–18; T.B. graduated from middle school in June 2016, and he apparently began attending Fox Meadow High School in Fall 2018. *Id.* ¶¶ 201, 276.

[13]    Fox Meadow High School is a "BOCES" program. *Id.* ¶ 274.  BOCES stands for Board of Cooperative Educational Services; it is a program provided by New York State. *See* BOCES, https://www.boces.org/services/ (last visited Feb. 2, 2023).

[14]    The IHO concluded that the High School Choice Program was "damagingly confusing and discriminatory," FOFD 2, Dkt. 48-4, at 76-77, 87-88, and that Defendants did not provide an adequate "continuum" of high school services for children with disabilities, *id.* at 9, 76.  Defendants did not appeal FOFD 2.  Am. Compl. ¶ 280.

[15]    A Regents diploma is a "local diploma" that a high school student in New York may earn by completing 22 units of credits and passing certain exams. *See* N.Y. State Educ. Dep't, *Diploma Types*, http://www.nysed.gov/curriculum-instruction/diploma-types (last visited Feb. 2, 2023).

and instruction while DPC 2 was pending, including credit-bearing tutoring and transportation,[16] among other relief.  Am. Compl. ¶¶ 277–79; FOFD 2 at 89, 95–96.  The IHO stated that compensatory services were required "until this matter is finally concluded or the parties otherwise agree, whichever comes first . . . ."  FOFD 2 at 94.

On August 28, 2018, Defendants' Office of Impartial Hearing Implementation Unit, referencing FOFD 2's transportation requirements, asked L.B. if she was "seeking a private car service such and [sic] Uber or Lyft or other contracted taxi or car service[,]" as well as "which method of payment" she was seeking.  Am. Compl. ¶ 287.  L.B. responded by email on September 5, 2018, that her son had "expressed some anxiety" regarding transportation with strangers and that she had decided to continue transporting her son to and from school.  *Id.* ¶ 293. L.B. also asked "what documents [she] would need to submit in order to receive payment."  *Id.* Defendants never responded to L.B.'s email, and the DOE has since advised that it is "unable to prospectively pay for" or "provide car service."  *Id.* ¶¶ 294–96.  The DOE never paid for or provided a car service for T.B. except for "a brief period of time during a bus strike."  *Id.* ¶ 297.

Although T.B. should have graduated in June 2021, he did not receive a diploma until October 7, 2021.  *Id.* ¶¶ 326–30.

As of August 2021, L.B. had applied for T.B. to receive adult career and continuing education services, but he remains at home without any further education programming.  *Id.* ¶¶ 339–40.  Defendants never provided "transition assessments" or engaged in "meaningful

---

[16]     FOFD 2 specifically required transportation "in the form of prospectively-funded private car service such as Uber or Lyft or other prospectively paid contracted taxi or car service, either by means of providing the family with a bank of gift cards or a prospectively-funded cash account with the car service to draw down from for the exclusive purpose of paying for the student's transportation . . . ."  FOFD 2 at 95.

transition planning" to provide T.B. with the "transition services" required by the IDEA.  *Id.* ¶¶ 324–25, 110.

After commencing this lawsuit, Plaintiffs filed a fourth Due Process Complaint ("DPC 4") covering the 2019–20, 2020–21 and 2021–22 school years; the next day they filed an Amended Complaint.  *Id.* ¶ 362; DPC 4, Dkt. 43-3.[17]

In addition to the allegations regarding T.B., Plaintiffs accuse Defendants of eight systemic failures to provide adequate education for New York City special education students:

- Defendants fail to ensure that students with IEPs can meaningfully participate in the High School Choice Program, *see id.* ¶¶ 50–87;

- Defendants do not provide special education students required modifications and accommodations with respect to their IEPs, *see id.* ¶¶ 88–92;

- Defendants offer only limited special education services at the high school level, *see id.* ¶¶ 93–109;

- Defendants do not provide adequate transition services for special education students when they move between schools, *see id.* ¶¶ 110–19;

- Defendants do not ensure the availability of vocational education for special education students, *see id.* ¶¶ 120–23;

- Defendants fail to provide appropriate assistive technology and devices for students with central auditory processing disorder, *see id.* ¶¶ 124–37;

- Defendants do not have programs and services for students with attention deficit disorder ("ADD") in high schools, *see id.* ¶¶ 138–41; and

---

[17]     Defendants included a portion of DPC 4 in the record in this case.  *See* Sprayregen Decl., Dkt. 43, ¶ 4; DPC 4, Dkt. 43-3.

- Defendants' policies and practices concerning special education transportation are
  inadequate, *see id.* ¶¶ 142–56.

On March 15, 2022, Defendants moved to dismiss the Amended Complaint for lack of
subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state
a claim under Rule 12(b)(6). *See* Defs. Not. of Mot.

## DISCUSSION[18]

### I.  The Court Has Subject-Matter Jurisdiction Over Certain Claims Under Section 1983 and the IDEA

#### A.  Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)
when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons v.
Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quotation omitted); *see
also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Indeed, "[f]ederal courts are
courts of limited jurisdiction, and may not preside over cases absent subject matter jurisdiction."
*Cherry v. Law Office of Felix Kozak*, No. 11-CV-3471 (SJF) (WDW), 2011 WL 4056069, at *1
(E.D.N.Y. Aug. 28, 2011); *see also Cty. of Nassau v. Hotels.com LP*, 577 F.3d 89, 91 (2d Cir.
2009).  A court considering a Rule 12(b)(1) motion may consider evidence outside of the
pleadings to determine whether subject-matter jurisdiction exists.  *Morrison v. Nat'l Austl. Bank
Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).

---

[18]      The Court does not address Defendants' argument that Plaintiffs may not recover attorneys' fees for DPC
1, *see* Defs. Mem., Dkt. 44, at 20–21, because Plaintiffs have represented that they are not seeking such fees, *see* Pls.
Mem., Dkt. 47, at 6 n.3.  The Court also does not address Defendants' argument that Plaintiffs' claims "based on
pendency" for violations after FOFD 2 was issued on August 6, 2018 must fail, *see* Defs. Mem. at 17–18; Plaintiffs
"do not raise 'pendency' claims" postdating FOFD 2 except to the extent they challenge Defendants' failure to
implement FOFD 2, Pls. Mem. at 6 n.3., which the Court addresses *infra* Section I.B.

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court. . . ." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004).  The exhaustion requirement "also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA." *Id.* (citations omitted).  Failure to exhaust ordinarily deprives a court of subject-matter jurisdiction.  *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002) (citing *Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir. 1995)).

To exhaust administrative remedies under the IDEA, a plaintiff must generally "(1) seek relief from an [IHO] and, if the IHO denied such relief, then (2) seek review by a State Review Officer ("SRO") . . . ."  *K.M. v. Adams*, No. 20-4128, 2022 WL 4352040, at *2 (2d Cir. Aug. 31, 2022) (citing *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379–80 (2d Cir. 2003)).  A plaintiff is not required, however, to appeal a favorable IHO decision, as only an aggrieved party may appeal to the SRO.  20 U.S.C. § 1415(g)(1); *see also R.B. ex rel. L.B. v. Bd. of Educ.*, 99 F. Supp. 2d 411, 415–16 (S.D.N.Y. 2000) (concluding that plaintiff was "not required" to appeal a hearing officer's decision for exhaustion purposes because "there was nothing for [the] plaintiff to appeal").

The Court has jurisdiction pursuant to Section 1983 to enforce favorable IDEA administrative decisions.  *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778 (KMK), 2019 WL 1437823, at *25 (S.D.N.Y. Mar. 23, 2019); *see also Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir. 1987) (concluding in connection with a claim brought under a predecessor statute to the IDEA that the court had subject-matter jurisdiction to consider a Section 1983 action seeking an injunction requiring defendants to "formulate and implement adequate complaint resolution procedures" but not to review the administrative decisions at issue); *Patrick v. Success Academy*

*Charter Schs., Inc.*, 354 F. Supp. 3d 185, 234 (E.D.N.Y. 2018) (holding that because the

plaintiffs received complete relief under the IDEA itself, the Court construed their claim as

seeking relief pursuant to Section 1983 for failure to provide an Interim Alternative Educational

Setting in violation of the IDEA when a special education student was suspended).

Exhaustion is not required if "(1) it would be futile to resort to the IDEA's due process

procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that

is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing

administrative remedies." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199

(2d Cir. 2002) (citation omitted). Plaintiffs bear the burden of showing the applicability of one

of those exceptions. *S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 293 (S.D.N.Y. 2007)

(citing *Murphy*, 297 F.3d at 199). Claims that do not require exhaustion include alleged

violations of IDEA's stay-put provision, *see Murphy*, 297 F.3d at 199, alleged failure to

"implement the clearly-stated requirements" of a student's IEP, *Polera*, 288 F.3d at 499, and

alleged systemic violations of the IDEA, *see J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 113 (2d Cir.

2004).

The administrative findings of fact and decisions ("FOFDs") issued in this case were

favorable to Plaintiffs. Therefore, for this Court to have subject-matter jurisdiction over

Plaintiffs' IDEA claims that were pursued administratively, the claim must be pursued pursuant

to Section 1983. For Plaintiffs' IDEA claims that were not pursued administratively, Plaintiffs

must demonstrate that they are exempt from the exhaustion requirement.[19]  The Court considers

each category of claims in turn.[20]

### B. The Court Has Subject-Matter Jurisdiction Under Section 1983 Over Any Claims Regarding Defendants' Failure to Implement FOFD 2 in Violation of the IDEA

Defendants argue that this Court does not have subject-matter jurisdiction over any of

Plaintiffs' claims involving events occurring from 2018 through 2021 because those claims have

not been exhausted.  *See* Defs. Mem. at 5–10.[21]  FOFD 2 awarded T.B. an additional year of

special education at Fox Meadow High School or in a similar program to be provided at any

point prior to August 31, 2025.  Defendants' compliance *vel non* with that aspect of FOFD 2

obviously has nothing to do with events that predated that decision.  Rather, the claim focuses on

what Defendants did to provide the compensatory education services that were ordered in FOFD

2 to make up for the two years that T.B. was out of school entirely.

---

[19]  To the extent Plaintiffs' allegations postdating 2017 do not fit into either of these categories, they are dismissed.

[20]  Defendants state in their memorandum in support of their motion to dismiss that they seek to dismiss Plaintiffs' claims "concerning the 2017-18, 2018-19, 2019-20, and 2020-21 school years," Defs. Mem. at 1, but they assert in their reply memorandum that "[a]ll" of Plaintiffs' systemic claims should be dismissed, Defs. Reply, Dkt. 56, at 4.  Although the Court does not generally consider a defense first raised in a reply brief, it will consider both grounds for dismissal because they pertain to the Court's subject-matter jurisdiction, which it may raise *sua sponte*, *See Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 449 (2d Cir. 2013) ("Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court *sua sponte*.") (internal quotation marks and citation omitted), and because Plaintiffs address exhaustion with respect to all of their systemic claims, *see* Pls. Mem. at 7–17.

[21]  Although the IDEA does not provide a statute of limitations for bringing IDEA claims in federal court based on failures to implement favorable administrative decisions, courts in this District have applied a three-year limitations period to such claims.  *See Stropkay v. Garden City Union Free Sch. Dist.*, 593 F. App'x 37, 41 (2d Cir. 2014); *P.C.R. v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778 (KMK), 2022 WL 337072, at *24 (S.D.N.Y. Feb. 4, 2022); *Piazza v. Fla. Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 689–90 (S.D.N.Y. 2011).  Because Defendants have not raised this affirmative defense to any of Plaintiffs' claims, the Court does not address it.  *See Smith v. City of New York*, 1 F. Supp. 3d 114, 118 (S.D.N.Y. 2013) ("Because the statute of limitations is an affirmative defense, [d]efendants carry the burden of showing that [a] [p]laintiff failed to plead timely claims.").

Although the parties do not address this issue in their briefing, the Court does not have subject-matter jurisdiction over these claims under the IDEA because Plaintiffs are not "aggrieved" parties as required to seek relief in federal court. 20 U.S.C. § 1415(g)(1); *see A.T. v. N.Y. State Educ. Dep't*, No. 98-CV-4166 (JG), 1998 WL 765371, at *6 (E.D.N.Y. Aug. 4, 1998) (concluding that because plaintiffs did not seek to "challenge any of the state review officer's findings against them," they were "before the [c]ourt solely for the purpose of enforcement, and [could not] be characterized as aggrieved parties under the IDEA"). The Court nevertheless has subject-matter jurisdiction to consider these claims under Section 1983. *See Mrs. W.*, 832 F.2d at 755; *Rutherford*, 2019 WL 1437823, at *25; *Patrick*, 354 F. Supp. 3d at 234.[22]

Plaintiffs insist that the Court also has subject-matter jurisdiction over individual claims postdating the 2017 school year that are not addressed in FOFD 2 because "the due process system has ceased to work in accordance with the IDEA" given "an enormous backlog" of due process hearings and systemic delays. Pls. Mem. at 16–17. Allegations that administrative bodies "persistently fail to render expeditious decisions" may in some cases be sufficient to render exhaustion futile. *Z.Q., et al. v. N.Y. City Dep't of Educ.*, No. 22-939, at 6 (2d Cir. Feb. 3, 2023) (summary order) (quoting *Frutiger v. Hamilton Cent. Sch. Dist.*, 928 F.2d 68, 74 (2d Cir. 1991)). But Plaintiffs only filed DPC 4, which allegedly pertains to the 2019–20, 2020–21 and 2021–22 school years, a day before filing their Amended Complaint, *see* Am. Compl. ¶ 362, and Plaintiffs' other due process complaints were resolved at the administrative level years before

---

[22]     To prevail on a Section 1983 claim, Plaintiffs must adequately allege that Defendants followed a "policy or custom" when they failed to comply with administrative decisions favorable to the Plaintiffs. *A.T.*, 1998 WL 765371, at *7 n.13; *see also Rutherford*, 2019 WL 1437823, at *39 (noting that "a plaintiff also must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury"). Because Defendants have not moved to dismiss on the grounds that Plaintiffs have not sufficiently stated Section 1983 claims with respect to Defendants' alleged failure to implement FOFD 2, the Court does not consider whether the Amended Complaint sufficiently alleges a policy, custom, or practice with respect to such claims.

Plaintiffs commenced this action, *see* FOFD 1; FOFD 2.  Plaintiffs have, therefore, not alleged any delays specific to this case, or to the types of claims they are making, that would warrant a finding of futility.[23]   Allowing a parent to avoid the administrative process entirely by simply alleging that the system is broken would essentially eviscerate the exhaustion requirement.

In sum, Defendants' motion to dismiss Plaintiffs' individual claims based on events postdating the 2017 school year is DENIED to the extent Plaintiffs' claim involves Defendants' failure to implement the compensatory education services, including transportation, as ordered in FOFD 2.

### C.  The Court Has Subject-Matter Jurisdiction Over Certain Systemic Claims under the IDEA

The Court has subject-matter jurisdiction over three of Plaintiffs' systemic IDEA claims.[24]   *See J.S.*, 386 F.3d at 113.  Plaintiffs' remaining purported systemic claims fail.[25]   The

---

[23]     In *Z.Q.*, by contrast, the plaintiffs alleged that the DOE could not adequately handle the volume of plaintiffs' complaints regarding pandemic-related compensatory services, the resolution of which had been "already long delayed," and further alleged that a particular DOE program aimed at addressing systemic delays in the provision of such services was itself inadequate.  *Z.Q., et al. v. N.Y. City Dep't of Educ.*, No. 22-939, at 6–7 (2d Cir. Feb. 3, 2023) (summary order) ; Complaint, *Z.Q. et al. v. N.Y. City Dep't of Educ.*, No. 20-CV-9866 (ALC), ¶¶ 145–48 (S.D.N.Y. Nov. 23, 2020).  Other cases in which the Second Circuit has opined that systemic delays could or did render exhaustion futile are distinguishable on similar grounds.  *See Frutiger*, 928 F.2d at 74 (dismissing an appeal for lack of appellate jurisdiction but generally noting that "if state administrative bodies persistently fail to render expeditious decisions as to *a child's* educational placement," exhaustion may be futile) (emphasis added);   *J.S. ex rel. N.S.*, 386 F.3d at 114 (noting that exhaustion may be futile if "the nature and volume of [plaintiffs'] complaints [a]re incapable of correction by the administrative hearing process"); *Jose P.*, 669 F.2d at 868–69 (affirming the district court's decision that exhaustion would be futile because the City's administrative system was "totally inadequate to handle the thousands of individuals in the classes awaiting suitable placement").

[24]     The three systemic claims that survive dismissal are: (1) Defendants' failure to provide adequate access for special education students to the High School Choice Program; (2) Defendants' failure to provide adequate services to special education students at the high school level; and (3) Defendants' failure to provide adequate transportation services for special education students.

[25]     The five purportedly systemic claims that are dismissed are: (1) Defendants' failure to provide requisite modifications and accommodations with respect to IEPs; (2) Defendants' failure to ensure adequate transition services between schools; (3) Defendants' failure to provide vocational education for diploma-bound special education students; (4) Defendants' failure to individualize assistive technology for students with central auditory processing disorder; and (5) Defendants' lack of programs and services for high school students with ADD.

Court considers each purported systemic claim in turn, beginning with those that survive Defendants' motion to dismiss.

### 1. Inadequate Access to High School Choice Program

Plaintiffs allege that Defendants prevent disabled students from meaningfully participating in the High School Choice Program. That Program allows eighth graders to rank high schools in order of preference so that Defendants can match students and schools. Am. Compl. ¶¶ 57–87. According to Plaintiffs, there are three inter-related problems with how Defendants implement the High School Choice Program for students with disabilities: (i) Defendants fail to advise parents when a disabled student's matched school is unable to implement the student's IEP; (ii) Defendants do not have policies or procedures in place to ensure that a student's IEP can be implemented at the student's matched high school; and (iii) Defendants do not have a process to accommodate a student at an alternative school if the matched school cannot implement the student's IEP. *Id.* The IHO in FOFD 2 concluded that the High School Choice Program had denied T.B. a FAPE and that it was "damagingly confusing and discriminatory" but that he could not address Plaintiffs' systemic allegations because his "reach extend[ed] only to [T.B.]" FOFD 2 at 76.

Plaintiffs' allegations regarding the High School Choice Program "are systemic in that the wrongdoing complained of is inherent in the [Program] . . . and is not directed against any specific child." *J.G. et al. v. Bd. of Educ.*, 830 F.2d 444, 446 (2d Cir. 1987) (concluding that plaintiffs' systemic allegations "fell within the well[-]established exceptions to the doctrine of exhaustion of administrative remedies"). Moreover, although claims of systemic violations "are often asserted as part of a class action, they can be made at the individual level, provided a systemic policy is at stake and the administrative officer has no power to correct the violation."

14

*Martinez v. N.Y. City Dep't of Educ.*, No. 17-CV-3152 (NGG) (CLP), 2018 WL 4054872, at *4 (E.D.N.Y. Aug. 24, 2018) (citations omitted); *see also Patrick*, 354 F. Supp. 3d at 210 n.26 (concluding that "[a]lthough the multiple instances where [the student] was allegedly deprived of due process involved only him," these allegations were "also sufficient to plead a systematic violation of due process") (citations omitted).

Because the IHO has no power to alter the High School Choice Program, exhaustion would be futile.  Accordingly, the Court has subject-matter jurisdiction over Plaintiffs' claim that the Program as implemented violates the IDEA.  *M.G. v. N.Y.C. Dep't of Educ.*, 15 F. Supp. 3d 296, 305 (S.D.N.Y. 2014) (concluding that plaintiffs' failure to exhaust systemic claims was excused because exhaustion would be futile).

### 2.   Limited Special Education Services for Special Education Students at the High School Level

Plaintiffs assert that Defendants violate the IDEA because they offer only limited services for special education students at the high school level.  Specifically, Plaintiffs complain, *inter alia*, that at the high school level, Defendants: (i) offer inadequate student-to-teacher ratios; (ii) do not provide sufficient individualized or smaller classes; and (iii) do not recommend special education services for non-academic and extracurricular activities.  Am. Compl. ¶¶ 93–105. Plaintiffs also allege that Defendants' policies result in students with disabilities missing classes and tutoring.  *Id.* ¶¶ 106–09.  T.B. was purportedly injured because Defendants' "continuum of services" did not include programming with "a small class, in a small school, with continuously supportive staff and programing . . . ."  FOFD 2 at 9.  The IHO who issued FOFD 2 again concluded that Defendants' failure to provide T.B. with an adequate "continuum" of services in high school had denied him a FAPE but that he could not address Plaintiffs' systemic allegations because his "reach extend[ed] only to [T.B.]"  FOFD 2 at 76.

Because these systemic allegations are not redressable by an IHO, *see J.G. et al.*, 830

F.2d at 446; *Martinez*, 2018 WL 4054872; at *4, *M.G.*, 15 F. Supp. 3d at 305, exhaustion would

be futile, and the Court has subject-matter jurisdiction over Plaintiffs' claim that the limited

services available for special education high school students violates the IDEA.

### 3.   Inadequate Special Education Transportation Services

Plaintiffs allege for the first time in their Amended Complaint[26] that Defendants'

"policies and practices concerning special education transportation" violate the IDEA, because a

parent seeking specialized transportation beyond door-to-door special education busing must

"obtain an outside evaluation" from a doctor "at his or her own expense."  Am. Compl. ¶¶ 147–

53.  L.B., for example, was purportedly ordered to obtain an outside medical evaluation before

Defendants would consider special travel accommodations for her son.  *Id.* ¶ 315.  In addition,

Defendants do not offer car service or 1:1 transportation.  *Id.* ¶ 156.

Although Plaintiffs did not raise this issue with an IHO before filing this action, it is not

subject to the exhaustion requirement because it involves a systemic policy incapable of

resolution by an IHO.  *See J.G. et al.*, 830 F.2d at 446; *Martinez*, 2018 WL 4054872, at *4;

*M.G.*, 15 F. Supp. 3d at 305.  The Court therefore has subject-matter jurisdiction over this claim.

### 4.   Modifications and Accommodations for Students with IEPs

Plaintiffs assert that Defendants' IEP teams "are not authorized to provide individualized

reasonable accommodations and modifications" to students with IEPs, and that Defendants lack

appropriate policies, procedures, and guidance to do so.  Am. Compl. ¶¶ 88–91, 194.  Plaintiffs

provide no facts to substantiate these boilerplate assertions, however, beyond alleging in a

---

[26]      Plaintiffs acknowledge that they did not raise this issue at all through the administrative process.  *See* Pls.
Mem. at 15.

conclusory way that Plaintiffs "were injured by" Defendants' "blanket policies and practices

. . . ." *Id.* ¶ 92.[27]  Plaintiffs' references to DPC 2 in their opposition brief suggest that this claim

intends to allege that Defendants do not authorize IEP teams to provide modifications and

accommodations *at high schools to which students with IEPs are matched*, *see* DPC 2 at 12–14,

25, but the Amended Complaint does not allege such a claim.

These half-baked allegations are insufficient to state a systemic claim.  *See Stropkay v.*

*Garden City Union Free Sch. Dist.*, 593 F. App'x 37, 41 (2d Cir. 2014) (summary order)

(concluding that plaintiffs' argument that the complaint alleged systemic violations "fail[ed]

because the need for specific services differs from student to student and is circumstance-

dependent," and "[a]lleging that some students were denied services is not sufficient to allege

'systemic violations'"); *L.V. v. N.Y.C. Dep't of Educ.*, No. 19-CV-05451 (AT) (KHP), 2020 U.S.

Dist. LEXIS 128723, at *25 (S.D.N.Y. July 17, 2020), *report and recommendation adopted*,

2020 WL 4677317 (S.D.N.Y., Aug. 12, 2020) (noting that the complaint made "only conclusory

statements about systemic wrongdoing" and that it included "no facts supporting allegations of

systemic issues," and therefore concluding that the exhaustion requirement was not satisfied).

This purported systemic claim is, therefore, dismissed for lack of subject-matter jurisdiction.

### 5.  Inadequate Transition Services[28]

According to Plaintiffs, Defendants failed to conduct age-appropriate transition

assessments for T.B. "for any year he was enrolled in the DOE" because they do not have

appropriate "policies, procedures, or practices" in place to do so.  Am. Compl. ¶ 110.  Plaintiffs

---

[27]     Plaintiffs state that they were injured "relative to [the Rehabilitation Act] and the ADA," *see* Am. Compl. ¶ 92, but list similar allegations as part of their IDEA claims, *see id.* ¶ 383(h).

[28]     Transition services are services designed to facilitate transition from high school to post-secondary education, vocational education, or other post-K-12 activities for children with disabilities. *Id.* ¶ 33.  Plaintiffs acknowledge that they did not raise this issue through the administrative process. *See* Pls. Mem. at 15.

allege that Defendants use a vocational questionnaire, do not empower IEP teams to develop individualized transition plans, and do not notify parents of high-school-bound students about transition services and planning.  *Id.* ¶¶ 111–19.  Again, however, Plaintiffs do not allege any specific facts that would allow the Court reasonably to infer that T.B. was injured by the alleged absence of individualized transition plans, let alone that disabled students as a whole are injured by Defendants' purported systemic violations.  *See L.V.*, 2020 U.S. Dist. LEXIS 128723, at *25; *Martinez*, 2018 WL 4054872, at *4.  This purported systemic claim is, therefore, dismissed for lack of subject-matter jurisdiction.

### 6.   Inadequate Vocational Training For Diploma-Bound Special Education Students

Plaintiffs allege that Defendants have not created adequate programs for students who are diploma-bound but who also require vocational education.[29]  Am. Compl. ¶¶ 120–23.  The only allegation that even remotely suggests that T.B. was injured by this purported policy is the allegation that T.B. "was unable to engage in meaningful vocational training on a remote basis" after the COVID-19 pandemic required remote schooling in March 2020.  *Id.* ¶¶ 322–23.  But that allegation cannot be read to allege that Defendants, as opposed to the COVID-19 pandemic, prevented T.B. from accessing adequate vocational training.  Plaintiffs suggest that, before students were required to attend school remotely, Fox Meadow High School did, in fact, offer vocational services to T.B.  *Id.* ¶ 323.  Plaintiffs' conclusory assertions of systemic violations are insufficient, and this claim is dismissed for lack of subject-matter jurisdiction.  *See Stropkay*, 593 F. App'x at 41; *L.V.*, 2020 U.S. Dist. LEXIS 128723, at *25.

---

[29]     Plaintiffs acknowledge that they did not raise this issue through the administrative process.  *See* Pls. Mem. at 15.

### 7. Lack of Individualized Assistive Technology and Devices for Students with Central Auditory Processing Disorder

Plaintiffs allege that Defendants' policies prevent IEP teams from recommending adequate technology for students who, like T.B., have central auditory processing disorder.  Am. Compl. ¶¶ 124–37.  Plaintiffs assert that Defendants "generally" use "old-fashioned" and "stigmatizing" technology that inhibits learning, but Plaintiffs do not allege any specific facts that connect T.B.'s (or any other student's) inferior learning to the technology provided (or not provided) as part of their IEPs.

The Amended Complaint both fails to assert that any specific student (including T.B.) was harmed by the practices it identifies as deficient, *see Martinez*, 2018 WL 4054872, at *4 (concluding that a plaintiff's discussion of "other children" was "immaterial" because her case did not "at all depend on whether <u>they</u> were denied a FAPE") (internal quotation marks and citation omitted), and only asserts facts unique to T.B.'s IEP, not facts related to systemic approaches to addressing the technology needs of students with auditory processing disorder, *see Levine v. Greece Cent. Sch. Dist.*, No. 08-CV-6072, 2009 WL 261470, at *8 (W.D.N.Y. Feb. 8, 2009) (concluding that the complaint did not state a systemic claim because it made "allegations of failure with respect to [the] plaintiff alone and not a failure that was inherent [to] the program itself") (internal quotation marks and citation omitted); *Moskowitz v. Great Neck Union Free Sch. Dist.*, No. 20-CV-1659 (KAM) (SIL), 2021 WL 4268138, at *9 (E.D.N.Y. Aug. 4, 2021) (noting that a "challenge to the education of a single disabled student is a matter that is within the ambit of the administrative scheme addressed by the IDEA").  This purported systemic claim is, therefore, dismissed for lack of subject-matter jurisdiction.

### 8.  Lack of Programs and Services for High School Students with ADD

Plaintiffs' final purported systemic claim is similarly deficient.  Plaintiffs assert that

Defendants do not have services and programs in high schools for students who, like T.B., have

ADD.  Am. Compl. ¶¶ 138–41.  Although FOFD 2 concluded that T.B. was denied a FAPE in

part because his IEP was not sufficiently tailored to his ADD, *see* FOFD 2 at 82–83, Plaintiffs

have not asserted any specific facts to expand their complaint about services available to T.B. to

services available for high school students with ADD writ large, *see Levine*, 2009 WL 261470, at

*8; *Moskowitz*, 2021 WL 4268138, at *9.  Because Plaintiffs' purported systemic allegations are

boilerplate, this claim is dismissed for lack of subject-matter jurisdiction.

In sum, the Amended Complaint adequately alleges three systemic claims:  Defendants'

failure to provide adequate access to the High School Choice Program for special education

students; Defendants' failure to provide adequate services for high school special education

students; and Defendants' failure to provide adequate transportation services for special

education students.  Plaintiffs' remaining purported systemic claims are DISMISSED for lack of

subject-matter jurisdiction.[30]

## II.  Plaintiffs State a Claim Under the Rehabilitation Act

### A.  Legal Standard

"To survive a motion to dismiss under [Rule] 12(b)(6), a complaint must allege sufficient

facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d

271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  "[A]

---

[30]  Because the exhaustion requirement "also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA[,]"  *J.S. ex rel. N.S.*, 386 F.3d at 112, Plaintiffs' claims under the Rehabilitation Act and the ADA are also dismissed; Plaintiffs do not dispute that their Rehabilitation Act and ADA claims are based on the same purported systemic conduct discussed *supra*.  *See generally* Pls. Mem.

complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  The Court is not required, however, to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Moreover, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

To state a claim under the Rehabilitation Act and the ADA for educational discrimination against a student with disabilities,[31] a plaintiff must allege adequately "(1) that []he is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the Acts; and (3) that []he was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [his] disabilit[y]." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).  Courts in this Circuit have recognized that such claims "may be predicated on the claim that a disabled student was 'denied access to a free appropriate education, as compared to the free appropriate education non-

---

[31]     Because the standards under the Rehabilitation Act and the ADA are "generally the same[,]" *Wright v. N.Y.S. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016), and "the subtle distinctions between the statutes are not implicated" here, *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023 (NSR), 2020 WL 2836760, at *9 (S.D.N.Y. May 31, 2020), the Court would have considered these claims together.  Because, however, Plaintiffs abandoned their ADA claims, *see infra* note 32, the Court discusses only Plaintiffs' Rehabilitation Act claims.

disabled students receive.'" *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 841 (2d Cir.

2014) (quoting *S.W. by J.W.*, 528 F. Supp. 2d at 290).

The parties here dispute whether Plaintiffs have adequately alleged that T.B. was denied

services because of his disability.  To satisfy this requirement, Plaintiffs must plead "something

more than a mere violation of the IDEA . . . ."  *J.L. on behalf of J.P. v. N.Y.C. Dep't of Educ.*,

324 F. Supp. 3d 455, 468 (S.D.N.Y. 2018) (internal quotation marks and citation omitted).

Plaintiffs must allege facts from which the Court can plausibly infer that Defendants "acted in

bad faith or with gross misjudgment when administering disability services."  *Id.* at 467

(collecting cases and concluding that plaintiffs stated claims under both the Rehabilitation Act

and the ADA because those statutes do not require proof "that [d]efendants acted with animosity

or ill will"); *Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07-CV-8828 (ER), 2013

WL 3929630, at *11 (S.D.N.Y. July 30, 2013) (noting that discrimination under the

Rehabilitation Act can be "inferred" when a school district "acts with gross negligence or

reckless indifference in depriving a student of access to a FAPE") (citation omitted).  Merely

alleging a systemic violation is not sufficient to meet this standard.  *See P.C.R. v. Fla. Union

Free Sch. Dist.*, No. 16-CV-9778 (KMK), 2022 WL 337072, at *26 (S.D.N.Y. Feb. 4, 2022)

(quoting *A.K. v. Westhampton Beach Sch. Dist.*, No. 17-CV-866, 2019 WL 4736969, at *14

(E.D.N.Y. Sept. 27, 2019))*.*

### B.  Plaintiffs State a Claim with Respect to Defendants' Alleged Failure to Provide T.B. a High School Education for Two Years

Defendants assert that Plaintiffs fail to state claims under the ADA or the Rehabilitation

Act because they do not "allege that T.B. was treated differently from non-disabled students or

denied reasonable accommodations based on his disability[,]" and because Plaintiffs' systemic

claims are conclusory.  Defs. Mem. at 11.[32]  Although the Court agrees that certain purported

systemic claims are insufficiently pled, as discussed *supra* Section I.C, two systemic allegations

key to Plaintiffs' discrimination claims under the Rehabilitation Act survive:  Defendants' failure

to provide T.B. meaningful access to the High School Choice Program and Defendants'

provision of only limited services for high school special education students.

Plaintiffs allege that Defendants violated the Rehabilitation Act because they failed to

timely match T.B. with a high school that could implement his IEP and failed to provide

adequate services for him during the school years 2016–17 and 2017–18.  *See* Am. Compl. ¶¶

50–87, 93–109, 239, 281.  According to Plaintiffs, those two failings operated to exclude T.B.

from the High School Choice Program and the high school education available to students

without disabilities.  *See A.K.*, 2019 WL 4736969, at *15 (denying a motion to dismiss plaintiffs'

Rehabilitation Act claim that the district "created a bifurcated system of treatment between

'typical' children and 'special education' children"); FOFD 2 at 76 (concluding that the High

School Choice Program is "damagingly confusing and discriminatory").

Such an extensive absence from school purportedly due to Defendants' violative conduct,

which the Court must accept as true for purposes of Defendants' motion to dismiss, is sufficient

for the Court to infer gross negligence or reckless indifference.  *See R.B. ex rel. L.B.*, 99 F. Supp.

2d at 414–15, 419 (denying defendants' motion to dismiss a plaintiff's Rehabilitation Act claims

because defendants' conduct allegedly caused a student to be "excluded from the classroom

setting" for an entire year); *Gabel ex rel. L.B. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist*, 368

---

[32]     Plaintiffs do not address Defendants' argument that these allegations fail to state a claim under the ADA.
*See generally* Pls. Mem.  The Court therefore considers Plaintiffs' ADA claims abandoned.  *See Baptiste v. Griffin*,
No. 18-CV-7274 (NSR), 2019 WL 5635808, at *5 (S.D.N.Y. Oct. 31, 2019) ("At the motion to dismiss stage . . . a
plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.")
(internal quotation marks and citation omitted).

F. Supp. 2d 313,  336 (S.D.N.Y. 2005) (denying defendants' motion for summary judgment on a Rehabilitation Act claim because the student "had nowhere to go—i.e., no access to school— only days before" the school year was set to begin and the school district "failed, in many ways, to do its job"); *Conway v. Bd. of Educ. of Northport-E. Northport Sch. Dist.*, No. 13-CV-5283 (SJF) (WDW), 2014 WL 3828383, at *18 (E.D.N.Y. Aug. 1, 2014) (concluding that a plaintiff's allegations that defendants placed her son in an "inappropriate and insufficient program," thus "exclud[ing] [him] from the school for almost his entire Junior year and prevent[ing] [him] from obtaining a sufficient number of credits to enable him to graduate on time[,]" were sufficient to withstand a motion to dismiss her Rehabilitation Act claim).

The Court briefly addresses Plaintiffs' argument that two other sets of allegations[33] — Defendants' purported failure to communicate adequately regarding modifications to the transportation relief awarded in FOFD 2 and Defendants' transportation policy generally — also adequately allege violations of the Rehabilitation Act.

Although Plaintiffs assert that Defendants were not sufficiently proactive in ensuring that T.B. was provided transportation as ordered by FOFD 2 and that Defendants' policy improperly requires an external medical evaluation to change the transportation services the Defendants offer, the Amended Complaint does not allege that T.B. was treated differently from students without disabilities.  *See P.C. v. McLaughlin*, 913 F.2d 1033, 1041 (2d Cir. 1990) (affirming summary judgment against the plaintiff because the student was allegedly "denied meaningful access to the benefits provided to other [individuals with disabilities]," and not that the school district failed to provide "even[-]handed treatment in relation to [students without disabilities]");

---

[33]     Plaintiffs also argue that Defendants' failure to provide adequate transition services states a claim under the Rehabilitation Act, but, as discussed *supra* Section I.C.5, this claim is barred because it has not been exhausted.

*Zahran ex rel. Zahran v. N.Y. Dep't of Educ.*, 306 F. Supp. 2d 204, 213–14 (N.D.N.Y. 2004)

(dismissing a Rehabilitation Act claim because the underlying allegations were "substantially the

same" as those underlying the IDEA claim, and the allegations were "essentially challenges to

the program itself, not [to] any type of discriminatory decisions").

Defendants' purported failure to follow up with L.B. after she said that she had decided

to drive T.B. to school herself does not change the analysis because it does not provide an

adequate factual basis from which the Court can infer gross negligence or reckless indifference.

*See S.W. by. J.W.*, 528 F. Supp. 2d at 289 ("[S]omething more than a mere violation of the IDEA

is necessary in order to show a violation of [the Rehabilitation Act].") (internal quotation marks

and citation omitted); *Schreiber v. E. Ramapo Ctrl. Sch. Dist.*, 700 F. Supp. 2d 529, 565–66

(S.D.N.Y. 2010) (granting defendants' motion for summary judgment because there was no basis

to conclude that the school district "acted with deliberate or reckless indifference or with gross

negligence in failing to provide [the student] with a FAPE" given that the school district was

generally "responsive" to parental requests even though it demanded an "unnecessary procedural

step"); *Zahran*, 306 F. Supp. 2d at 213–14 (finding that plaintiffs' claims did not show that the

district acted with gross negligence when plaintiffs alleged that the district "failed to make

necessary evaluations to develop a proper IEP" and failed "to offer prompt administrative

review").

In sum, Plaintiffs' allegations that T.B. missed two years of credit-bearing high school

instruction due to Defendants' discriminatory High School Choice Program and was provided

inadequate high school-level services state claims under the Rehabilitation Act.  The balance of

Plaintiffs' claims under the Rehabilitation Act are DISMISSED for failure to state a claim and the ADA claims are dismissed because they were abandoned.[34]

### III.     Plaintiffs Fail to State a Section 1983 Claim of a Violation of Due Process

To state a claim under Section 1983, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (citations omitted); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

"It is well settled, however, that a plaintiff asserting a constitutionally based [Section 1983] claim for procedural violations of the IDEA must establish a constitutional violation outside the scope of the IDEA." *Engwiller v. Pine Plains Cent. Sch. Dist.*, 110 F. Supp. 2d 236, 250 (S.D.N.Y. 2000) (internal quotation marks and citations omitted).  Put differently, a plaintiff cannot seek redress under Section 1983 for violations of procedural due process under the Fourteenth Amendment "if the violations for which she seeks redress are actionable under the IDEA."  *Id.* at 250–51; *see also Bonar v. Ambach*, 771 F.2d 14, 18 (2d Cir. 1985) (noting that a plaintiff's "allegations of due process violations" under Section 1983 must "state a claim outside the scope of" the IDEA to be actionable).

Plaintiffs assert that Defendants "denied T.B. his property interest in education and a diploma" in violation of the 14th Amendment and that Defendants "have failed to ensure parents in New York City access to due process hearings that comply with the IDEA and [the Rehabilitation Act]" due to insufficient resources and widespread delays.  Am. Compl. ¶¶ 369–

---

[34]     To the extent T.B.'s Rehabilitation Act and ADA claims are dismissed, L.B.'s associational discrimination claims are dismissed as well.  *See Avaras v. Clarkstown Cent. Sch. Dist.*, No. 18-CV-6964 (NSR), 2019 WL 4600870, at \*18 (S.D.N.Y. Sept. 21, 2019) (noting that if a student failed to state a discrimination claim under the ADA and the Rehabilitation Act, it "necessarily follows" that his parents' associational discrimination claim fails as well).

70, 405.  Plaintiffs do not make any specific allegations regarding T.B.'s lack of due process,

however, and do not address this issue in their opposition brief.  Nor do they challenge

Defendants' assertion that T.B. has already received a high school diploma.[35]  Plaintiffs'

boilerplate allegations do not state a claim.  *See Jenn-Ching Luo v. Baldwin Union Free Sch.*

*Dist.*, No. 12-CV-3073 (JS) (AKT), 2013 WL 1182232, at *6 (E.D.N.Y. Mar. 21 2013)

(dismissing a plaintiff's due process claim because the complaint "d[id] not specify the nature"

of the claim and allegations in the complaint criticizing administrative hearings did not state a

constitutional violation outside the scope of the IDEA); *Vinluan on behalf of D.V. v. Ardsley*

*Union Free Sch. Dist.*, No. 19-CV-6496 (NSR), 2021 WL 3193128, at *9 (S.D.N.Y. July 27,

2021) (same); *Schultz v. Inc. Village of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) (summary

order) (concluding that because the plaintiff "was unable to establish an underlying violation of

his constitutional rights[,]" his "*Monell* claim necessarily fail[ed] as well").

      Because Plaintiffs do not allege any facts regarding distinct due process violations, their

due process claim is DISMISSED for failure to state a claim.

### IV.    Plaintiffs May Be Entitled to Damages Based on Defendants' Failure to Provide Transportation As Required By FOFD 2

      Defendants urge the Court to find that Plaintiffs do not "plead facts that would entitle

them to damages" for Defendants' alleged failure to provide transportation as required by FOFD

2 because: damages are not available under the IDEA; FOFD 2 did not require Defendants to

arrange T.B.'s transportation; and Plaintiffs have not alleged that Defendants refused to provide

transportation.  *See* Defs. Mem. at 14–17.

---

[35]    The Court therefore need not address Defendants' argument that Plaintiffs lack standing to seek declaratory and injunctive relief with respect to T.B.'s diploma.  *See* Defs. Mem. at 19–20.  Plaintiffs may be attempting to allege that T.B. should have been issued a diploma from Fox Meadow High School rather than from George Washington Carver High School or that T.B. should have been issued a more fulsome transcript, but the Amended Complaint as written does not make those allegations, and Plaintiffs do not argue that those are their claims.

Although monetary damages "are not available under the IDEA itself," they are available pursuant to Section 1983 for a violation of the IDEA. *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 786 n.14 (2d Cir. 2002) (citing *Polera*, 288 F.3d at 483 & n.5). Because, as discussed *supra* Section I.B, the Court has subject-matter jurisdiction pursuant to Section 1983 over Plaintiffs' claim that Defendants failed to comply with FOFD 2 vis-à-vis their responsibility to provide car service to transport T.B. to school, damages are not necessarily foreclosed.[36]

The Court is sympathetic to Defendants' argument that L.B. cannot recover any damages for driving T.B. to and from school because "the only situation in which a parent might be entitled to reimbursement for services they provided is if 'the school board refused to provide services, and the [parent] had shown that a trained service provider was not available.'" Defs. Mem. at 15 (quoting *Dervishi v. Dep't of Special Educ.*, 846 F. App'x 10, 13 (2d Cir. 2021) (summary order)). As Plaintiffs argue, there are significant differences between the facts in *Dervishi* and the facts here; nevertheless, the Court is skeptical that a parent can unilaterally opt to drive her child to school and then recover from the school district as though she is a private car service.[37]

Based on the minimal caselaw Defendants proffer in their briefing, the Court is not prepared to foreclose at this stage the possibility that Plaintiffs can prove that they are entitled to

---

[36]     As discussed *supra* note 22, Defendants do not move to dismiss based on Plaintiffs' failure to state a claim for violations of the IDEA under Section 1983. The Court has, therefore, not had occasion to determine whether Plaintiffs have made sufficient factual allegations to state a claim under Section 1983 and thus be eligible for damages.

[37]     The Court also does not address the parties' dispute regarding whether Defendants were obligated to propose alternative transportation arrangements to L.B. pursuant to a settlement agreement in a separate action, *see* Pls. Mem. at 9–10, Defs. Reply at 8 n.5, as it does not affect this opinion.

         *Dervishi* also does not speak to whether a parent may recover for the other forms of damages Plaintiffs demand, such as loss of employment opportunities, emotional distress, or lost wages.

damages for Defendants' purported violations of FOFD 2.  Defendants' motion to dismiss
Plaintiffs' request for damages is, therefore, DENIED.

### V.     Plaintiffs Do Not Identify a Private Right of Action to Bring State Education Law Claims

The New York Education Law "explicitly states that '[n]othing in this section shall be
construed as creating a private right of action against the department or an educational agency.'"
*Magnoni v. Plainedge Union Free Sch. Dist.*, No. 17-CV-4043 (DRH) (AKT), 2018 WL
4017585, at *7 (E.D.N.Y. Aug. 22, 2018) (quoting N.Y. Educ. Law § 2-d(7)(c)).  Plaintiffs do
not address this issue in their opposition brief at all, and the Court is not aware of any authority
pursuant to which Plaintiffs have a private right of action under the New York Education Law or
the New York Education Regulations.  *See Ctr. for Disc., Inc. v. D.P.*, No. 16-CV-3936 (MKB)
(RER), 2018 WL 1583971, at *9 (E.D.N.Y. Mar. 31, 2018) (concluding that counter-claimants
"failed to identify the authority pursuant to which they have a private cause of action under [the
New York Education Law and the New York Education Regulations]").

Plaintiffs' claims under the New York Education Law and the New York Education
Regulations are, therefore, DISMISSED for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of subject-matter
jurisdiction is DENIED with respect to individual claims regarding Defendants' failure to
implement FOFD 2 by denying T.B. adequate transportation services and credit-bearing
instruction in violation of the IDEA under Section 1983 and DENIED with respect to systemic
claims regarding access to the High School Choice Program, education services available for
special education students at the high school level, and transportation services for special
education students, and otherwise GRANTED.  Accordingly, all individual claims regarding

29

Defendants' purported violations of the IDEA unrelated to Defendants' implementation of FOFD 2, and all systemic claims regarding modifications and accommodations for special education students, transition services, vocational training, assistive technology for students with central auditory processing disorder, and programs and services for high school students with ADD, are DISMISSED without prejudice.

Defendants' motion to dismiss for failure to state a claim is DENIED with respect to Plaintiffs' claim that Defendants discriminated against T.B. under the Rehabilitation Act through the High School Choice Program and by failing to provide adequate special education services for him once he was in high school, and otherwise GRANTED.  Accordingly, claims under the Rehabilitation Act and the ADA regarding modifications to FOFD 2 relative to Defendants' transportation obligations and Defendants' transportation policy, and Defendants' alleged due process violations under Section 1983 are DISMISSED without prejudice.  Claims under the New York Education Law and the New York Education Regulations are DISMISSED with prejudice.

The discovery stay in this action is hereby lifted.  Not later than **Monday, February 20, 2023**, the parties must meet and confer and file a joint letter to the Court setting forth a proposed discovery schedule.  Not later than **Monday, February 27, 2023**, Plaintiffs must show cause why they should not be required to disclose their full names inasmuch as T.B. was not a minor when this action was commenced.

The Clerk of Court is respectfully directed to close the open motion at Docket 42, and to strike the phrase "on behalf of herself and on behalf of her child" from the caption.

**SO ORDERED.**

Date:   **February 6, 2023**
        **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**